UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA LYNCH,

              Plaintiff,

v.

ENTERPRISE CHECK SYSTEMS INC,
POLITAN PROCESSING CORPORATION,
INTERNATIONAL CONTRACT
ENFORCEMENT INC., ANTHONY J.
SORDETTO III, DOMINIC J. FRATERRIGO,
JOHN C. LAURICELLA II, JUSTIN JOSEPH
TATA and MARK SAMUEL GUARINO,

              Defendants.

_____/

Case No. 1:14-cv-1145

HON. GORDON J. QUIST

FIRST AMENDED COMPLAINT

I.      **Introduction**

1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection

Practices Act ("MCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC")

M.C.L. § 339.901 *et seq.*

2.      Defendants, along with other entities to be identified in discovery, are involved in

a fraudulent and ongoing scheme whereby they have conspired to use false representations and

threats to coerce the payment of money from consumers across the country who allegedly have

failed to repay payday loans.  This scheme, operated by defendants as well as many other entities

located in and around Buffalo, New York, is based on the use of a script, sometimes known as

1

"The Shakedown" or "The Shake," that includes variations of the following: The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's account will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      The use of these unlawful debt collection practices by defendants and other debt collectors is epidemic in the Buffalo, New York metropolitan area, as described in the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by

the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants. The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued releases that warn consumers about this ongoing scam.

## II.     Jurisdiction

4.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.   Venue in this judicial district is proper because the pertinent events took place here.

## III.    Parties

5.     Plaintiff Dana Lynch is an adult, natural person residing in Kent County, Michigan.  Ms. Lynch is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Lynch is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

6.     Defendant Enterprise Check Systems Inc. ("Enterprise") is an active New York corporation, registered on February 20, 2014, and doing business from an office building located at 2338 Elmwood Avenue, Kenmore, New York 14217.  According to documents filed by Enterprise with the New York Department of State, service of process accepted by the DOS on behalf of Enterprise will be mailed to Anthony Sordetto, P.O. Box 162, Kenmore, New York 14217.  Enterprise is owned, operated and managed by defendant Anthony J. Sordetto III. Enterprise is in the business of collecting delinquent consumer debts, usually payday loans.

According to the Enterprise internet website (http://enterprisechecksys.wix.com/info), Enterprise "specializes in the acquisition of portfolios of past due receivables for the purpose of settling delinquent consumer obligations" and has a telephone number of 844-653-1027. Other telephone numbers used by Enterprise include 855-220-6715 and 855-201-3475. Enterprise uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Enterprise regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Enterprise is a "debt collector" as the term is defined and used in the FDCPA. Enterprise is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Enterprise is a "collection agency" and "licensee" as the terms are defined and used in MOC.

  7.  During all times pertinent hereto, Enterprise directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

  8.  Defendant Politan Processing Corporation ("Politan") is an active New York corporation, registered on June 13, 2012, and doing business from an office building located at 2338 Elmwood Avenue, Kenmore, New York 14217. According to documents filed by Politan with the New York Department of State, service of process accepted by the DOS on behalf of Politan will be mailed to Anthony J. Sordetto, 2338 Elmwood Avenue, Kenmore, New York 14217. According to the Politan internet website (www.politanprocessingcorporation.com), receives mail at P.O. Box 95, Tonawanda, New York 14223, has a telephone number of 855-418-5490 and has a fax number of 716-768-1550. Politan processes the payment of the money that defendants collect from consumers through the use of extortion and other means that are

described in this complaint. Politan is owned, operated and managed by defendant Anthony J. Sordetto III. Politan is in the business of collecting delinquent consumer debts, usually payday loans. Politan uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Politan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Politan is a "debt collector" as the term is defined and used in the FDCPA. Politan is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Politan is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.     During all times pertinent hereto, Politan directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

10.     Defendant International Contract Enforcement Inc. ("ICE"), formerly known as National Contract Enforcement, Inc., is an active New York corporation, registered on August 14, 2012, and doing business from an office building located at 2338 Elmwood Avenue, Kenmore, New York 14217. According to documents filed by ICE with the New York Department of State, service of process accepted by the DOS on behalf of ICE will be mailed to Anthony J. Sordetto, 2338 Elmwood Avenue, Kenmore, New York 14217. ICE is owned, operated and managed by defendant Anthony J. Sordetto III. ICE is in the business of collecting delinquent consumer debts, usually payday loans. ICE uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ICE regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ICE is a "debt collector" as the term is defined and used in the FDCPA. ICE is a

"regulated person" as the term is defined and used in the MCPA. Alternatively, ICE is a "collection agency" and "licensee" as the terms are defined and used in MOC.

11. During all times pertinent hereto, ICE directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

12. Defendant Anthony J. Sordetto III, also known as AJ Sordetto, is an adult, natural person, age 35, residing a 173 Carpenter Avenue, Buffalo, New York 14223. Mr. Sordetto is an owner, officer, manager, employee and agent of Enterprise, Politan and ICE. Mr. Sordetto uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Sordetto regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Mr. Sordetto is a "debt collector" as the term is defined and used in the FDCPA. Mr. Sordetto is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Mr. Sordetto is a "collection agency" and "licensee" as the terms are defined and used in MOC.

13. Mr. Sordetto owns a small, two-story office building, located at 2338 Elmwood Avenue, Kenmore, New York 14217. Mr. Sordetto operates Enterprise, Politan and ICE from the Elmwood Avenue location. Mr. Sordetto owns Sordetto Realty Inc., registered on November 29, 2013, which also is operated by Mr. Sordetto from the Elmwood Avenue location. Mr. Sordetto owns Pinnacle Processing Inc, registered on August 27, 2013, which also is operated by Mr. Sordetto from the Elmwood Avenue location.

14. Mr. Sordetto frequently posts comments and photographs on multiple social media internet websites. On November 30, 2012, Mr. Sordetto posted to his Facebook page

(https://www.facebook.com/aj.sordetto): "Wow! What a close out! I really have the best group of collectors in WNY. Clearing 90% of post dates on the last day of the month amazing! You guys are the best! #BuildingEmpire."  A person using the name Thomas Benjamin responded "Well be there in twenty minute make sure there is no dog or firearms on the premises!"  Thomas Benjamin's response was tongue-in-cheek, referring to part of a script used by Mr. Sordetto's collectors when falsely representing by telephone to consumers that the collector is a process server en route to the consumer's home or place of employment to serve the consumer with a non-existent lawsuit.  Moments later, Mr. Sordetto responded, "Shhhhhhhh!!! LOL!!!"  On March 24, 2014, Mr. Sordetto posted to his Twitter page (https://twitter.com/Asordetto) : "I make a million bucks every 6 months."  On May 30, 2014, Mr. Sordetto posted to his Twitter page: "Pick with one of my rising stars! #futureCEO" and linked the post to a photograph placed by Mr. Sordetto on Instagram  (www.instagram.com/p/ooNLCYmh-h/) that depicts Mr. Sordetto and a person named Dominic Fraterrigo, both standing behind Mr. Sordetto's Cadillac Escalade that was parked alongside the office building located at 2338 Elmwood Avenue, Kenmore, New York 14217.

15.     During all times pertinent hereto, Mr. Sordetto (a) created the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Enterprise, Politan and ICE, (c) oversaw the application of the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by Enterprise, Politan and ICE, and their employees and/or agents collect debts from

consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Enterprise, Politan and ICE, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Enterprise, Politan and ICE, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

16.     During all times pertinent hereto, Mr. Sordetto directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

17.     Defendant Dominic J. Fraterrigo is an adult, natural person, age 23, residing at 55 Chatsworth Avenue, Buffalo, New York 14217-1401.  Mr. Fraterrigo is a manager, employee and agent of Enterprise, Politan and ICE.  Mr. Fraterrigo uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Fraterrigo regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Fraterrigo is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Fraterrigo is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Fraterrigo is a "collection agency" and "licensee" as the terms are defined and used in MOC.

18.     During all times pertinent hereto, Mr. Fraterrigo (a) created the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise

controlled the daily collection operations of Enterprise, Politan and ICE, (c) oversaw the application of the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by Enterprise, Politan and ICE, and their employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Enterprise, Politan and ICE, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Enterprise, Politan and ICE, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

19.     During all times pertinent hereto, Mr. Fraterrigo directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

20.     Defendant John C. Lauricella II is an adult, natural person, age 23, purportedly residing at 71 Homer Avenue, Buffalo, New York 14216-2301. However, according to the New York Secretary of State, Mr. Lauricella claims in his motor vehicle registration to be residing at 2338 Elmwood Avenue, Apartment 1, Buffalo, New York 14217-2602. Mr. Lauricella  is a manager, employee and agent of Enterprise, Politan and ICE. Mr. Lauricella  uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Lauricella  regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Mr. Lauricella  is a "debt collector" as the term is

defined and used in the FDCPA.  Mr. Lauricella  is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Lauricella  is a "collection agency" and "licensee" as the terms are defined and used in MOC.

21.     During all times pertinent hereto, Mr. Lauricella  (a) created the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Enterprise, Politan and ICE, (c) oversaw the application of the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by Enterprise, Politan and ICE, and their employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Enterprise, Politan and ICE, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Enterprise, Politan and ICE, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

22.     During all times pertinent hereto, Mr. Lauricella  directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

23.     Defendant Justin Joseph Tata is an adult, natural person, age 30, residing at 31 Joseph Drive, Apartment C, Tonawanda, New York 14150-6252.  Mr. Tata is a manager,

employee and agent of Enterprise, Politan and ICE.  Mr. Tata  uses interstate commerce and the

mails in a business the principal purpose of which is the collection of debts.  Mr. Tata regularly

collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be

owed or due another.  Mr. Tata  is a "debt collector" as the term is defined and used in the

FDCPA.  Mr. Tata  is a "regulated person" as the term is defined and used in the MCPA.

Alternatively, Mr. Tata  is a "collection agency" and "licensee" as the terms are defined and used

in MOC.

24.     During all times pertinent hereto, Mr. Tata (a) created the collection policies and

procedures used by Enterprise, Politan and ICE, and their employees and/or agents, in connection

with their common efforts to collect consumer debts, (b) managed or otherwise controlled the

daily collection operations of Enterprise, Politan and ICE, (c) oversaw the application of the

collection policies and procedures used by Enterprise, Politan and ICE, and their employees

and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by

Enterprise, Politan and ICE, and their employees and/or agents collect debts from consumers,

including the tactics and scripts that were used to attempt to collect an alleged debt from Ms.

Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and

procedures used by Enterprise, Politan and ICE, and their employees and/or agents in connection

with their common efforts to collect consumer debts, and (f) had knowledge of, approved,

participated in, and ratified the unlawful debt collection practices used by Enterprise, Politan and

ICE, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as

alleged in this complaint.

25.     During all times pertinent hereto, Mr. Tata  directly and indirectly participated in

the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

26. Defendant Mark Samuel Guarino is an adult, natural person, age 36, residing at 2115 Colvin Boulevard, Tonawanda, New York 14150-6918. Mr. Guarino is an employee and agent of Enterprise, Politan and ICE. Mr. Guarino uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Guarino regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Mr. Guarino is a "debt collector" as the term is defined and used in the FDCPA. Mr. Guarino is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Mr. Guarino is a "collection agency" and "licensee" as the terms are defined and used in MOC.

27. During all times pertinent hereto, Mr. Guarino (a) created the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Enterprise, Politan and ICE, (c) oversaw the application of the collection policies and procedures used by Enterprise, Politan and ICE, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by Enterprise, Politan and ICE, and their employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Enterprise, Politan and ICE, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Enterprise,

12

Politan and ICE, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

28.　　During all times pertinent hereto, Mr. Guarino directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

29.　　A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.　　Facts

30.　　On or about June 20, 2007, Ms. Lynch's then-husband used Ms. Lynch's name, social security number and other personal and financial information to obtain a payday loan via the internet from an entity named CashNetUSA ("CashNet"), in the amount of approximately $418.61. CashNet assigned the transaction an account number of 10556011.

31.     Ms. Lynch's then-husband obtained the loan without Ms. Lynch's consent or knowledge.  Ms. Lynch's then-husband used the borrowed funds to purchase goods and services for personal, family and household purposes.  Any resulting obligation repay the money borrowed by Ms. Lynch's then-husband using Ms. Lynch's name was a "debt" as the term is defined and used in the FDCPA, MCPA and MOC.

32.     Ms. Lynch's ex-husband failed to repay the debt.

33.     Ms. Lynch disputed and refused to repay the debt.

34.     Ms. Lynch continues to dispute and continues to refuse to repay the debt.

35.     CashNet charged off the account and related debt.

36.     On or about September 28, 2007, CashNet sold the account and related debt to an entity named AIS Services, LLC ("AIS").

37.     In May of 2013, AIS sold the account and related debt to an entity named Cascade Capital, LLC ("Cascade").

38.     On or about June 7, 2013, Cascade placed the account and related debt for collection with an entity named Dynamic Recovery Solutions, LLC ("DRS").

39.     Cascade claims that DRS is the only entity with which Cascade has ever placed the account and related debt for collection.

40.     DRS claims that it has never placed the account and related debt for collection with defendants or any other entity.

41.     Cascade claims to be the current and sole owner of the account and related debt.

42.     Cascade and DRS claim that DRS is the only entity with a legal right to collect the account and related debt.

43.     Somewhere along the way, defendants Enterprise Check Systems, Inc., Politan Processing Corporation, International Contract Enforcement Inc. and Anthony J. Sordetto III, along with other entities to be identified in the course of discovery, stole or otherwise obtained Ms. Lynch's stolen account information as to the CashNet account and then engaged in a campaign to coerce Ms. Lynch through criminal extortion and other unlawful means to pay a debt that Ms. Lynch did not owe and that defendants had no right to collect.

44.     The account and related debt has been delinquent for a period of more than six years. No payment has been made on the account and related debt for a period of more than six years. The account and related debt are no longer judicially enforceable by operation of the applicable statute of limitation. Stated differently, the account and related debt are time-barred.

45.     On October 14, 2014 at approximately 5:03 p.m., defendants placed a call from telephone number 855-201-3475 to Ms. Lynch's cellular telephone and left the following message on Ms. Lynch's voice mail: "This message is intended for Dana Lynch. You are being contacted by Enterprise Check systems concerning a returned item from your personal checking account, in regards to the following file number, CN4157. At this point in time, we would need a return call, from your or your counsel, at 855-201-3457, and be advised, this is not a solicitation. This will require an immediate response."

46.     On October 22, 2014 at approximately 6:48 p.m., defendants placed a call from telephone number 844-653-1024 to Ms. Lynch's cellular telephone and left the following pre-recorded and/or computer generated message on Ms. Lynch's voice mail: "This message is intended for Dana Lynch. You are being contacted by Enterprise Check systems concerning a returned item from your personal checking account, in regards to the following file number,

CN4157.  At this point in time, we would need a return call, from your or your counsel, at 855-201-3457, and be advised, this is not a solicitation.  This will require an immediate response."

47.    On October 24, 2014 in the afternoon, Ms. Lynch placed a call to 844-653-1024. The call was answered by defendants' employee and/or agent with the words, "Enterprise Check Systems."  Defendants' employee and/or agent stated that his name was Ryan Jennings.  In the ensuing conversation, defendants' employee and/or agent made the following representations to Ms. Lynch:

a)     "There's two pending claims against your name and social security number, due to a loan you took out with CashNet back in June 20, 2008."

b)     "Did you just receive a phone call or did you sign off on any court documentation at all?"

c)     "I you haven't signed off on any court documents to appear, then it's possible you don't have a solidified court date set up, and you may be able to resolve that before that happens.  Is that what your are looking to do?"

d)     The current balance on the account is $399.99, but you can resolve it today for $250.00.

e)     The name of our company is Enterprise Check Systems.

f)     We got your account from CashNet.  We are a mediation firm.

g)     When you pay us, "everything is relieved off your credit."

h)     You borrowed $398.45.

i)     Your original account number is 10556011.

j)     Our company's address is P.O. Box 162, Kenmore, New York 14217.

16

k)     Politan Processing Corporation is the company that will process payments you make to our company.

l)     Our internet website is http://enterprisechecksys.wix.com/info.

48.    On October 24, 2014 at approximately 4:44 p.m., defendants placed a call from telephone number 716-748-6494 to Ms. Lynch's cellular telephone and left the following message on Ms. Lynch's voice mail:  "Dana Lynch, this is Mr. [unintelligible] over here at Enterprise Check Systems.  Just giving you a call back to see if you received the emails.  Give me a call back.  I'll give you my direct office line, at 716-748-6494.  Once again, 716-748-6494.  Was calling your number.  Just give the case number CN4157.  Thank you.  And I'm actually, I'm leaving out of the office in twenty minutes, so if you can't contact me within twenty minutes, I'll give you a call."

49.    On October 27, 2014 at approximately 11:55 a.m., defendants placed a call from telephone number 716-748-6494 to Ms. Lynch's cellular telephone and left the following message on Ms. Lynch's voice mail:  "Dana Lynch, this is [unintelligible] Jackson over here at Enterprise Check Systems.  I spoke with you on Friday about setting up that arrangement for the 250.  You're gonna have to give me a call at my direct office extension line at 716-404-4696.  If I'm not in the office or answering at the moment [message abruptly terminated]."

50.    On October 28, 2014 at approximately 2:05 p.m., defendants placed a call from telephone number 716-748-6494 to Ms. Lynch's cellular telephone and left the following message on Ms. Lynch's voice mail:  "This message is solely intended for Dana Lynch.  This is Ryan Jennings over hear at Claims and Litigation Department of Enterprise Check Systems.  At this point in time I am contacting you concerning the payment restitution you were gonna set up

on the 24th of October for 250 and that's not being taken care of, so at this point in time I am

legally obligated to inform you that this department will be fafilitating [sic] a motion with the

Lombird Legal Service Division as of 5:00 p.m. today.  Please be advised we will be faxing the

affidavit binding you to all court costs and legal fees, with the second supporting deposition,

which is the People of the State versus you named as the defendant.  Now at this time, at this

point in time, this will be your final opportunity for voluntary restitution of this claim.  You can

reach my department at 844-653-1024, or you can reach me at my direct office extension of 716-

748-6494.  When calling in, please refer to your index number, which is CN4157.  Please be

advised this is not a solicitation and will warrant you immediate response.  Thank you."

      51.    On October 31, 2014 at approximately 9:57 a.m., defendants placed a call from

telephone number 844-653-1024 to Ms. Lynch's cellular telephone and left the following

message on Ms. Lynch's voice mail:  "This final message is intended for Dana Lynch.  This is

Sam Hopkins, private courier.  I'm calling to remind you that today's your scheduled service

date.  I will be stopping by your residence or place of employment to have you sign for your

certified Notice of Intent.  You have a claim that is being filed against you and you have until I

reach you personally to discuss this matter with the claimant's office handing your claim.  They

can be reached at 844-653-1024.  Your claim number listed in the order is 4157.  Unless I hear

differently, I will be out to see you as soon as possible today."

      52.    On November 3, 2014 at approximately 3:55 p.m., defendants used telephone

number 603-323-0735 to send to Ms. Lynch's cellular telephone the following text message:

"Eric Jacobs (process server) has made three attempts to your verified residence and/or employer.

Unfortunately documents have been surrendered to officials out of the legal service dept.  To

avoid being detained contact 844-653-1024 with case#cn4157."

53.     On November 4, 2014 in the afternoon, Ms. Lynch placed a call to 844-653-1024. The call was answered by defendants' employee and/or agent with the words, "Enterprise Check Systems." Defendants' employee and/or agent stated that his name was Sam Jackson. In the ensuing conversation, defendants' employee and/or agent made the following representations to Ms. Lynch:

a)     Ms. Lynch's account was accruing interest at the rate of eighteen percent per annum.

Ms. Lynch asked Mr. Jackson to identify the name of the entity that supposedly sold her CashNet account to defendants. Mr. Jackson put Ms. Lynch on hold and then transferred the call to a person named Dwight Harris. In the ensuing conversation, Mr. Harris made the following representations to Ms. Lynch:

b)     I'm just the office manager. I don't know and I can't find out who sold your account to us. If you refuse to pay, then our job is to package it up and send it out for suit.

c)     We purchased the account on July 12, 2013.

54.     The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.

55.     Defendants and their employees and agents in the described communications

failed to meaningfully identify themselves and the their companies.

56. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that they were process servers.

57. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that they owned the account.

58. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that they had the legal right to collect the account.

59. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that there were claims "pending" against Ms. Lynch.

60. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that a lawsuit had been filed against Ms. Lynch to collect the alleged debt.

61. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that a lawsuit would be filed against Ms. Lynch to collect the alleged debt.

62. Defendants and their employees and agents in the described communications falsely represented to Ms. Lynch the amount of the alleged debt.

63. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that Ms. Lynch would need to appear in court.

64.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that they had acquired the account from CashNet.

65.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that information regarding the account was being reported on Ms. Lynch's credit reports by the consumer reporting agencies.

66.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that if Ms. Lynch paid money to defendants, then defendants would cause derogatory information regarding the account to be removed from Ms. Lynch's credit history.

67.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that defendants have a "Claims and Litigation Department."

68.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that defendants retain lawyers to collect the debts.

69.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that defendants intended to retain lawyers to collect the alleged debt from Ms. Lynch.

70.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that Ms. Lynch had committed a crime.

71.     Defendants and their employees and agents in the described communications

falsely represented and falsely implied to Ms. Lynch that defendants "we will be faxing the affidavit binding you to all court costs and legal fees, with the second supporting deposition, which is the People of the State versus you named as the defendant."

72.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that the government would be filing a lawsuit in the name of the "People of the State" and against Ms. Lynch to collect the alleged debt and to criminally prosecute Ms. Lynch.

73.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that Ms. Lynch was scheduled that same day to be served at her residence or place of employment with a summons and complaint.

74.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that they had made at least three visits to Ms. Lynch's residence or place of employment in efforts to serve Ms. Lynch with a summons and complaint.

75.     Defendants and their employees and agents in the described text communication falsely represented and falsely implied to Ms. Lynch that she would be "detained" if she did not contact defendants.

76.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that Ms. Lynch's account was accruing interest at the rate of eighteen percent per annum.

77.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that defendants had purchased Ms. Lynch's

CashNet account on July 12, 2013.

78.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Lynch that they were attorneys.  Much more likely, defendants employees and agents failed to graduate from high school.

79.     Defendants did not intend to file a lawsuit against Ms. Lynch in any Michigan court in efforts to collect the alleged debt.

80.     No defendant has never filed any lawsuit in any Michigan court to collect any debt from any person.

81.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that a lawsuit had been filed against Ms. Lynch to collect a time-barred debt.

82.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that a court had issued some sort of order, requiring Ms. Lynch to appear in court.

83.     The FDCPA states that it is unlawful for a debt collector to use or threaten to use criminal means to harm the reputation or property of any person. 15 U.S.C. § 1692d(1).

84.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

85.     The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

86.     The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

87.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

88.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

89.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

90.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

91.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

92.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

93.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

falsely imply that the consumer committed any crime or other conduct in order to disgrace the consumer.  15 U.S.C. § 1692e(7).

94.    The FDCPA states that it is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

95.    The FDCPA states that it is unlawful for a debt collector to use any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court of the United States or any State, or which creates a false impression as to its source, authorization, or approval. 15 U.S.C. § 1692e(9).

96.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

97.    The FDCPA states that it is unlawful for a debt collector to fail to disclose in an oral communication with the consumer that the communication is from a debt collector and that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11)

98.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

99.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

100.    The FDCPA states that it is unlawful for a debt collector to use unfair or

unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

101.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

102.    Defendants have violated the FDCPA, 15 U.S.C. §§ 1692d(1) and (6), 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (9), (10), (11), (13) and (14), and 1692f and 1692f(1).

103.    The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.

104.    Defendants and their employees and/or agents falsely accused Ms. Lynch of having committing a crime.  Ms. Lynch's refusal to pay the alleged debt was not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4).

105.    Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made. *People v. Maranian*, 359 Mich. 361 (1960).

106.     Defendants and their employees and/or agents attempted to criminally extort

money from Ms. Lynch and violated M.C.L. § 750.213.

107.     Enterprise, through its employees and agents, directly and indirectly, attempted to

collect the alleged debt from Ms. Lynch.

108.     The acts and omissions of Enterprise, done in connection with efforts to collect

the alleged debt from Ms. Lynch, were done intentionally and wilfully.

109.     Enterprise intentionally and wilfully violated the FDCPA, MCPA and MOC.

110.     Politan, through its employees and agents, directly and indirectly, attempted to

collect the alleged debt from Ms. Lynch.

111.     The acts and omissions of Politan, done in connection with efforts to collect the

alleged debt from Ms. Lynch, were done intentionally and wilfully.

112.     Politan intentionally and wilfully violated the FDCPA, MCPA and MOC.

113.     ICE, through its employees and agents, directly and indirectly, attempted to

collect the alleged debt from Ms. Lynch.

114.     The acts and omissions of ICE, done in connection with efforts to collect the

alleged debt from Ms. Lynch, were done intentionally and wilfully.

115.     ICE intentionally and wilfully violated the FDCPA, MCPA and MOC.

116.     Mr. Sordetto, directly and indirectly, attempted to collect the alleged debt from

Ms. Lynch.

117.	Mr. Sordetto created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

118.	The messages left by defendants and their employees and agents on telephone answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Sordetto.

119.	The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Sordetto.

120.	Mr. Sordetto oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

121.	The acts and omissions of Mr. Sordetto, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

122.	Mr. Sordetto intentionally and wilfully violated the FDCPA, MCPA and MOC.

123.	Mr. Fraterrigo, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

124.	Mr. Fraterrigo created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

125.	The messages left by defendants and their employees and agents on telephone

answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Fraterrigo.

126.    The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Fraterrigo.

127.    Mr. Fraterrigo oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

128.    The acts and omissions of Mr. Fraterrigo, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

129.    Mr. Fraterrigo intentionally and wilfully violated the FDCPA, MCPA and MOC.


123.    Mr. Lauricella, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

124.    Mr. Lauricella created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

125.    The messages left by defendants and their employees and agents on telephone answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Lauricella.

126.    The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created,

scripted, approved, and ratified by Mr. Lauricella.

127.     Mr. Lauricella oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

128.     The acts and omissions of Mr. Lauricella, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

129.     Mr. Lauricella intentionally and wilfully violated the FDCPA, MCPA and MOC.

130.     Mr. Tata, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

131.     Mr. Tata created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

132.     The messages left by defendants and their employees and agents on telephone answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Tata.

133.     The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Tata.

134.     Mr. Tata oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

135.     The acts and omissions of Mr. Tata, done in connection with efforts to collect the

alleged debt from Ms. Lynch, were done intentionally and wilfully.

136.    Mr. Tata intentionally and wilfully violated the FDCPA, MCPA and MOC.

137.    Mr. Guarino, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

138.    Mr. Guarino created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

139.    The messages left by defendants and their employees and agents on telephone answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Guarino.

140.    The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Guarino.

141.    Mr. Guarino oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

142.    The acts and omissions of Mr. Guarino, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

143.    Mr. Guarino intentionally and wilfully violated the FDCPA, MCPA and MOC.

144.    Defendants failed to send Ms. Lynch a timely and written notice containing the information required by the FDCPA, 15 U.S.C. § 1692g(a).

145.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

146.     Defendants, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

147.     As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.     Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

148.     Plaintiff incorporates the foregoing paragraphs by reference.

149.     Defendants have violated the FDCPA.  Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted

collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Michigan Collection Practices Act

150.    Plaintiff incorporates the foregoing paragraphs by reference.

151.    Defendants have violated the MCPA.  Defendants' violations of the MCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(b) by using forms or instruments which simulate the appearance of judicial process;

c)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

d)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

e)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

f)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

g)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

h)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.252;

b)      Treble the actual damages pursuant to M.C.L. § 445.252;

c)      Statutory damages pursuant to M.C.L. § 445.252;

d)      Equitable relief pursuant to M.C.L. § 445.252; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.252.

### Count 3 – Michigan Occupational Code

152.    Plaintiff incorporates the foregoing paragraphs by reference.

153.    Defendants have violated the MOC.  Defendants' violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

34

b)      Defendants violated M.C.L. § 339.915(b) by using forms or instruments which simulate the appearance of judicial process;

c)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

d)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

e)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

f)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

g)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

h)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

i)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: December 1, 2014                  /s/ Phillip C. Rogers
                                         Phillip C. Rogers (P34356)
                                         Attorney for Plaintiff
                                         40 Pearl Street, N.W., Suite 336
                                         Grand Rapids, Michigan 49503-3026
                                         (616) 776-1176
                                         ConsumerLawyer@aol.com